**LOUISVILLE & NASHVILLE RAILROAD COMPANY et al., Appellants,**

**v.**

**COMMONWEALTH of Kentucky, on Relation of the KENTUCKY RAILROAD COMMISSION, et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 19, 1956.

As Modified and Extended on Denial of Rehearing April 26, 1957.

Thomas J. Wood and Lively Wilson, Louisville, and Erle J. Zoll, Jr., Chicago, Ill., for Illinois Cent. R. Co.

Louis Seelbach, Louisville, and L. L. Oliver, Washington, D. C., for Southern Ry. Co. and the Cincinnati, N. O. & T. P. Ry. Co.

C. S. Landrum, Clarence Raymond, Lexington, J. F. Wheeler, Prime F. Osborn, Louisville, L. W. Morris, Frankfort, for Louisville & N. R. Co.

Jo M. Ferguson, Atty. Gen., M. B. Holifield, Asst. Atty. Gen., Seth T. Boaz, Jr., Mayfield, Robert E. Webb, Squire R. Ogden, Louisville, for appellees.

MONTGOMERY, Judge.

This appeal is from a judgment upon an order of the Railroad Commission of Kentucky in favor of the Kentucky Utilities Company, Inc., reducing the freight rate on fine coal and awarding reparation in the aggregate sum of $235,799.18, plus further reparation to be determined by the Commission. The appellants are the Louisville & Nashville Railroad Company, Illinois Central Railroad Company, Southern Railway Company, The Cincinnati, New Orleans and Texas Pacific Railway Company, and Kentucky & Tennessee Railway.

Complaint was made on February 11, 1954, to the Railroad Commission by Kentucky Utilities Company, Inc., that the freight rates charged by appellants on fine coal were unjust and unreasonable. In its Docket No. 728, Kentucky Utilities Company, Inc. v. Louisville & Nashville Railroad Company, et al., the Commission ordered a reduction in such rates and made an award of reparation. Appellants refused to comply with the order and award. The Railroad Commission, proceeding under KRS 276.370, obtained a judgment upholding its action.

In essence, the grounds urged for reversal of the judgment are: (1) the trial court failed to make specific findings of fact and state separately its conclusions of law as required by CR 52.01; and (2) there was no substantive evidence upon which to base the judgment. The second ground contains a further objection that certain evidence considered by the Commission was incompetent.

The Commission made findings of fact and stated conclusions of law in its report and order as twice supplemented and amended. These, together with the evidence considered by the Commission, were filed in the circuit court. No other evidence was introduced. The trial court in the judgment rendered found that "the findings, orders and award, as amended, are supported by substantial evidence". Appellants contend that such a finding by the trial court is insufficient under CR 52.01.

 The Railroad Commission is an administrative body acting in a legislative capacity under constitutional authorization. Kentucky Constitution Section 209. Illinois Cent. R. Co. v. Paducah Brewery Co., 157 Ky. 357, 163 S.W. 239; Louisville & N. R. Co. v. Greenbrier Distillery Co., 170 Ky. 775, 187 S.W. 296; City of Middlesboro v. Louisville & N. R. Co., Ky., 252 S.W.2d 680; Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150. The review of the action of such an administrative body is limited to determining whether there is substantial evidence to support its findings and conclusions. Thus, the trial court had one question to decide: whether there was substantial evidence upon which to base the findings, order, and award of the Railroad Commission. For further discussion on this point, and cases governing other types of administrative boards, see Railroad Commission of Kentucky v. Illinois Cent. R. Co., Ky., 265 S.W.2d 797. Specific findings of fact are unnecessary in such cases. Despatch Shops, Inc., v. Railroad Retirement Board, D.C., 60 F.Supp. 106, affirmed 2 Cir., 154 F.2d 417; In re Chicago, M., St. P. & P. R. Co. (Abrams v. Scandrett), 7 Cir., 138 F.2d 433; State of Illinois v. United States, D.C.N.D.Ill., 146 F.Supp. 195. The trial court, in upholding the report of the Commission, made the only necessary determination.

The Railroad Commission in its report found that the appellants had been charging an unjust and unreasonable rate on fine coal delivered to the Kentucky Utilities plant near Tyrone, Kentucky. Fine coal, for the purpose of this opinion, is coal three inches in diameter, or smaller. In determining the sufficiency of the evidence to support the findings, it is necessary to review the testimony introduced before the Commission.

The Kentucky Utilities Company is engaged in the business of generating, transmitting, and distributing electric energy in 75 counties in Kentucky, joined by interconnections with other generators of electric energy. The three largest steam generating plants of the several operated by the company are located near Pineville in eastern Kentucky, at South Carrollton on the Green River in western Kentucky, and at Tyrone on the Kentucky River in central Kentucky. The delivered cost of coal is the major item in the operation of a steam generating plant. The railroads received 52% of the cost of the coal for transporting it. The average freight charges paid by the complainant on coal for the week ending just prior to the filing of the complaint were $1 per ton for Green River, $1.38 per ton for Pineville, and $3.18 per ton for Tyrone. The average freight charge paid on coal moving to Tyrone in 1953 was $3.03 per ton. With the exception of the mines served by Kentucky & Tennessee Railway in the Pine Knot group, all of the railroads charged the same rate of fine coal to Tyrone as on coal of other sizes. The fine coal rate charged by the Kentucky & Tennessee Railway to Tyrone was 37¢ lower than the rate on other sizes. This lower rate was described as a "missionary rate" to assist the Stearns Coal & Lumber Company, owner of the Kentucky & Tennessee Railway, in stimulating some business for its mines. The lower rate failed to have the desired effect and appellants contend that it should not have been considered.

The rates prevailing when the complaint was filed, the new rates prescribed, and the reductions ordered are shown by the following table:

| To Tyrone, Ky. From | Miles | Assailed Rate | Rate prescribcd by order Apr. 18, 1955 | Reduction under order Apr. 18, 1955 |
|---|---|---|---|---|
| Western Ky. .............. | 219 | $2.91 | $2.34 | $ .57 |
| Hazard ................... | 174 | 2.60 | 2.04 | .56 |
| McRoberts ............... | 219 | 2.71 | 2.14 | .57 |
| Jellico-M'boro ............ | 150 | 2.60 | 2.04 | .56 |
| Harlan ................... | 191 | 2.71 | 2.14 | .57 |
| Pine Knot ............... | 112 | | | |
| K. & T. R.R. Mines....... | 118 | 2.37 | | |
| | | *2.00 | 1.59 | .41 |
| C.N.O. & T.P. Ry........ | 102 | 2.37 | 1.59 | .78 |

* Applicable on fine coal only.

The evidence introduced before the Commission consisted of 217 pages of testimony and 77 exhibits. All of the exhibits were introduced by witnesses, who testified concerning them. Much of the testimony for the complainant was given by rate experts from, as indicated by the record, prepared statements with the exhibits attached. This testimony appears to have been made available to the appellants, either prior to or at the hearing. The record does not disclose that any objection was made to the competency or materiality of any of the testimony offered, either at the Commission hearing or the circuit court trial.

Appellants now complain that the Commission improperly considered one of its previous decisions and one of the Interstate Commerce Commission's without introducing the records of those proceedings in evidence. Excerpts from the rulings were introduced as exhibits. Each was definitely identified and testified about by witnesses.

█ The general rule is that administrative tribunals are not bound by the strict or technical rules of evidence governing jury trials. This is especially true where the administrative order has only the effect of prima facie evidence. See KRS 276.370. The process by which proof is simplified in a judicial proceeding by the court's taking judicial notice of matters of common knowledge permits an administrative tribunal to take official notice of the same matters of which a court takes notice. There is no error in the Railroad Commission's considering such parts of its decisions or the decisions of the Interstate Commerce Commission when they are introduced in evidence and properly identified so that the parties to the proceedings may know with what evidence they are confronted in order that they may refute or rebut such evidence. 42 Am. Jur., Public Administrative Law, Sections 129, 130, pages 461, 464; United States v. Abilene & S. R. Co., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016. Illinois Cent. R. Co. v. Railroad Commission of Kentucky, D.C., 1 F.2d 805, cited by appellants, is not in point since it concerned Commission schedules and rates in its files which were not introduced in evidence. In the case at bar, the evidence complained of was introduced and witnesses testified concerning it. Appellants had an opportunity to meet and explain it. The evidence was competent.

█ The Commission in its original report and order quoted from Dickey v. L. &

N. R. Co., 1931–33, Biennial Report of the Railroad Commission, at page 162. Appellants object that this was evidence considered which was not introduced at the hearing and they had been deprived of an opportunity to refute it. The quotation was used as a precedent or reference rather than as evidence. It was not used to prove or disprove any fact in issue. The 85% basis of the Holmes & Hollowell scale for comparative rate purposes was referred to in the quotation. Such use is very common. Baltimore & O. R. Co. v. United States, D.C., 65 F.Supp. 962. The Commission's reference to the Dickey case in its order was proper.

Evidence concerning various comparative rates was considered by the Commission. Appellants complain that these rates should not have been considered since they had been depressed to meet various types of competition. The evidence as to the "missionary rate" made available to the Pine Knot group of mines by the Kentucky & Tennessee Railway and to the lower rates available on certain southbound coal over the same lines for similar distances is objected to by appellants. It was shown that the rate from western Kentucky mines to Louisville is competitive because of the availability of water transportation. No water transportation is involved to Tyrone. Because of competition, the rail rate from the western Kentucky mines to Louisville is $1.50 on an average distance of 117 miles. The rate from the same mines to Tyrone, 66 miles beyond Louisville, is $3.08, or $1.58 higher than the rate to Louisville. The difference in rate is explained only by the lack of competition between Louisville and Tyrone. There was proof as to other comparative rates.

■ The argument by appellants that the competitive rates should not have been considered in determining a just and rea-

sonable rate is fallacious. In view of the large volume of freight hauled at competitive rates, no contention is made that those rates are not compensatory or are confiscatory. Competitive rates when compensatory, therefore, may be just and reasonable rates.

■ Evidence of comparative rates is not controlling but should be examined with all other evidence and accorded its proper weight. The Railroad Commission is a skilled body, especially created for such a function, and is presumed capable of so doing. Such evidence is admissible and is to be considered for what it may be worth. Baltimore & Ohio R. Co. v. United States, D.C., 65 F.Supp. 962.

■ In addition to the evidence mentioned before, a basis was shown for allowing fine coal a lower rate than other coal. It was testified that fine coal should bear a lower rate than the rates on other coal because: (1) the railroads have provided lower rates on fine coal than the contemporaneous rates on coal of other sizes to Louisville, Kentucky, Spring City and Dayton, Tennessee, and to points generally; (2) fine coal is of less value than coal of other sizes; (3) fine coal loads about 20% heavier than coal of other sizes; (4) there is a greater concentration of movement of fine coal than of coal of other sizes; and (5) the value of the service to the shipper is less on fine coal. Such a distinction has been recognized. Iowa Railroad Commission v. Alton & Sou. R. Co., 128 I.C.C. 293.

At the Commission hearing, each side introduced evidence and exhibits showing various scales of coal rates for comparative purposes. These included the Holmes & Hollowell scale, which appears to have had much use in such matters. There was evidence to show that the rates on fine

coal to Tyrone were unjust and unreasonable when compared with fine coal rates to other nearby utilities and that the scales of coal rates afforded a proper basis for a lower rate on fine coal.

In further considering the basis of the second ground urged for reversal, that is, the sufficiency of the evidence to support the judgment, KRS 276.370 provides that "the findings of the commission shall be prima facie evidence as to the facts found". The complexities and intricacies of rate making have been recognized, as well as the need for experts in this field. Southern R. Co. in Kentucky v. Frankfort Distillery, 233 Ky. 771, 26 S.W.2d 1025; Virginian R. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463. The determination of freight rates is peculiarly a field for administrative law. Ayrshire Collieries Corp. v. United States, 335 U.S. 573, 69 S.Ct. 278, 93 L.Ed. 243. When the statute gives prima facie effect to the findings of the Commission, and when those findings are upheld by the circuit court, it has been held that they should not be interfered with unless the record establishes that clear and unmistakable error has been committed. Cincinnati, H. & D. R. Co. v. Interstate Commerce Commission, 206 U.S. 142, 27 S.Ct. 648, 51 L.Ed. 995; National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799; International Association, etc. v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50.

Upon the whole case, there is substantial evidence to support the findings of the Commission and the appellants have failed to sustain the burden of showing error.

Judgment is affirmed.

HOGG, J., not sitting.